CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED

SEP 03 2014

JULIA C. DUDLEY, CLERK
BY: /s/ Deputy Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| JAMIE LEE TOWLER, | ) |
| | ) Case No. 7:13-cv-00458 |
| Petitioner, | ) |
| | ) |
| v. | ) MEMORANDUM OPINION |
| | ) |
| | ) |
| CARL MANIS, Warden, | ) By: Hon. Michael F. Urbanski |
| | ) United States District Judge |
| Respondent. | ) |

Petitioner Jamie Lee Towler ("Petitioner" or "Towler"), through counsel, filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. Dkt. No. 1. Respondent filed a motion to dismiss, Dkt. No. 3, and Petitioner has filed a response. Dkt. No. 7. Accordingly, the matter is now ripe for decision.

Respondent contends that the sole claim in the petition is procedurally defaulted because Towler did not include it in his petition for appeal to the Court of Appeals of Virginia and that, as a result, this court may not consider it. The court concludes that Towler has asserted a gateway claim of actual innocence sufficient to overcome his procedural default and that his claim is properly before the court. For this reason, discussed in more detail below, Respondent's motion to dismiss is **DENIED**.

I.   **Factual and Procedural Background**

   A.   **Factual Background**

Towler was charged with eight felonies arising from the robbery of the CVS Drug Store in the Town of Altavista on December 1, 2008. He waived his right to a jury and was tried before Judge John T. Cook of the Circuit Court of Campbell County. Judge Cook found him guilty on a number of counts, including the sole conviction he challenges in his federal habeas petition—use of

a firearm in the commission of a burglary.[1] See Dkt. No. 1. On that conviction, he was sentenced to the five-year mandatory minimum sentence on April 16, 2010. Dkt. 5, Ex. A, at 1-2.[2]

In his petition before this court, he argues that his conviction was for conduct that—based on an intervening legal decision—no longer suffices to establish his guilt. At the time of his trial and the filing of his petition for appeal, the controlling law pursuant to Creasy v. Commonwealth, 9 Va. App. 470, 389 S.E.2d 316 (1990) was that a conviction for use or display of a firearm during commission of a burglary could be based on any use or display while in the burglarized premises. Creasy was abrogated by the Supreme Court of Virginia's decision in Rowland v. Commonwealth, 281 Va. 396, 400, 707 S.E.2d 331, 333 (2011), issued on March 4, 2011, while Towler's direct appeal was pending. In Rowland, the Supreme Court of Virginia held that a conviction for use or display of a firearm during commission of a burglary required that the firearm be used or displayed during entry to the premises.

Petitioner argues that the evidence in his case establishes that he walked into the drug store, which was open to the public at the time, and only displayed his firearm once he was inside. He thus claims that his current incarceration for this conviction violates his due process rights because the evidence establishes that an essential element of the crime—use or display of a weapon to make entry—did not occur.

It is not necessary to delve deeply into the facts of the offense or the testimony at trial for purposes of ruling on Respondent's motion to dismiss. The pertinent facts are that a man (who Judge Cook determined was Towler) entered the CVS in Altavista, Virginia shortly before 9:00 p.m.

---

[1] Specifically, Judge Cook found him guilty of five of the charged counts; found him guilty of a lesser offense on one count, and dismissed the other two. Dkt. 5, Ex. A, at 1-2.

[2] He was sentenced on all of the convictions as follows: ten years for robbery; three years for use of a firearm in commission of robbery; two years for attempted robbery; five years for use of a firearm in commission of burglary; twenty years for statutory burglary while armed with a deadly weapon; and two years for unlawfully wearing a mask in public. Dkt. 5, Ex. A, at 1-2. All of the sentences were suspended, with the exception of the three-year mandatory minimum for use of a firearm in commission of a robbery, and the five-year mandatory minimum for use of a firearm in the commission of a burglary. Id.

2

on December 1, 2008. Towler v. Commonwealth, 59 Va. App. 284, 288, 718 S.E.2d 463, 465-66 (2011), also at Dkt. No. 5-6 at 1. His face was partially concealed, but his eyes were exposed. Dkt. No. 5-6 at 1. He walked up to the pharmacy counter where a clerk was working and handed her a note demanding money and threatening to kill her if she did not give him the money. Id. The clerk testified at trial that, after reading the note, she looked back at the man. At that point, he pushed up his shirt and revealed what appeared to be the handle and trigger of a gun that was otherwise concealed in the front of his waistband. Id. at 2; see also Trial Tr. at 85-87.

As the clerk was gathering the money, the man screamed and demanded "all the money and the Oxycontin" from the pharmacist. Dkt. No. 5-6 at 2. When the pharmacist told the man that he could not access the safe, and that it would take a long time to examine the already-filled prescriptions to determine which ones were for Oxycontin, the man left without any Oxycontin, but with approximately $230.00 from the cash registers at the pharmacy counter. Id.

### B. Procedural Background

Towler was sentenced on April 16, 2010. Towler timely appealed his convictions to the Court of Appeals of Virginia. In his petition for appeal, which was filed on August 24, 2010, he raised five assignments of error. See Dkt. No. 5-2 at 5-7. He did not include the claim raised in his federal habeas petition to this court, which is based on the Supreme Court of Virginia's decision in Rowland.[3]

Approximately five weeks after Rowland was decided, on April 12, 2011, the Court of Appeals issued a per curiam opinion denying Towler's petition for appeal. See Dkt. No.1-1 at 1. Three days later, Towler filed a demand for three-judge review of that decision and for the first time specifically cited Rowland for the proposition that the evidence was insufficient to convict him. Towler was granted an appeal on June 15, 2011, and in his July 2011 brief, included an argument

---

[3] As noted, Rowland was issued on March 4, 2011, more than six months after Towler's petition was filed.

3

based on Rowland. He admitted that the argument had not been preserved, but requested an "ends of justice" exception under Virginia Supreme Court Rule 5A:18. Dkt. No. 5-4 at 12-15. The Court of Appeals issued an opinion on December 20, 2011, affirming his convictions. Dkt. No. 5-6 at 1-12. That court refused to address any argument based on Rowland because it was not raised in Towler's petition for appeal and Virginia Supreme Court Rule 5A:12 provides that "[o]nly assignments of error assigned in the petition for appeal will be noticed by" the Court of Appeals. See Dkt. No. 5-6 at 4. That court further noted that Rule 5A:12, unlike Rule 5A:18, contains no "good cause" or "ends of justice" exception to excuse the procedural default. Id. at 4 n.7.

Towler then appealed to the Supreme Court of Virginia, which also refused his petition for appeal on April 17, 2012. Dkt. No. 5-7. His petition for rehearing was also denied, on June 15, 2012. See Dkt. No. 1-1 at 4; Dkt. No. 5 at 2.

Towler subsequently filed a state habeas petition in the Circuit Court for Campbell County. In his state habeas petition, he alleged that "he was being held in violation of Due Process based on [a] conviction where the evidence was insufficient." Dkt. No. 1-1 at 1. Specifically, he claimed that there was no evidence to support his conviction for use of a firearm in the commission of a burglary, because no evidence showed he used the firearm to gain entry to the building, as required by Rowland. Dkt. No. 1-1, at 4. His petition was denied by the circuit court on the grounds that his claim was procedurally defaulted. Dkt. No. 1-1.

The state habeas court reasoned that Towler's claim was procedurally barred because he failed to raise it in his petition for appeal and noted that "[t]he perceived utility of the argument does not excuse the Parrigan[4] bar. Epperly v. Booker, 235 Va. 35, 44, [366 S.E.2d 62] (1988)." Dkt. No. 1-1 at 2. The state habeas court also disagreed with Towler's assertion that the case of O'Connor v. Ohio, 385 U.S. 92 (1996), should control. Specifically, the habeas court described O'Connor as

---

[4] Slayton v. Parrigan, 205 S.E.2d 680, 684 (Va. 1974), held that a habeas corpus petitioner may not use habeas corpus to raise an issue that he failed to raise at trial and on appeal.

4

ruling that "a procedural bar on a constitutional right was not foreclosed," and concluded that "Towler's argument is solely to the sufficiency of the evidence and does not raise a constitutional right." Dkt. No. 1-1 at 2. On September 12, 2013, the Supreme Court of Virginia refused Towler's petition for an appeal of the state habeas decision.

Thus, at each previous level of review since Towler first raised the Rowland argument—which he initially did approximately forty days after it was decided—Virginia's courts have refused to address the merits of the claim. Instead, they have consistently held that the claim is procedurally barred because he failed to raise it in his initial petition for appeal—despite the fact that Rowland had not been decided at the time he filed that petition for appeal and despite the fact that there is a strong argument that, pursuant to Rowland, Towler's conduct as proved at trial would not suffice to sustain a conviction for use of a firearm during commission of a burglary.[5] On October 3, 2013, Towler timely filed his federal habeas corpus petition.

## II. Exhaustion

A state prisoner seeking federal habeas relief has an obligation to present his claims in state court before raising them in a § 2254 petition. See Wolfe v. Johnson, 565 F.3d 140, 160 (4th Cir. 2009) (citing 28 U.S.C. § 2254(b)(1)(A)). As the Fourth Circuit has explained,

> If [the petitioner's] claims were not presented in state court, they will generally be procedurally defaulted, and the federal court will be unable to adjudicate them. See Vinson v. True, 436 F.3d 412, 417 (4th Cir. 2006). A § 2254 petitioner may, however, overcome such a procedural default by showing "cause and prejudice" or by establishing that his confinement constitutes "a miscarriage of justice." Wainwright v. Sykes, 433 U.S. 72, 90–91, 97 S. Ct. 2497, 53 L. Ed. 2d 594 (1977); McNeill v. Polk, 476 F.3d 206, 211 (4th Cir. 2007) (citing Coleman v. Thompson, 501 U.S. 722, 750, 111 S. Ct. 2546, 115 L. Ed. 2d 640 (1991)). A proper showing of "actual

---

[5] The court does not address the merits of his claim in this opinion, and notes that the parties have not briefed the merits in this court. But cf. Dkt. No. 5-5 at 17-18 (Commonwealth's brief before Virginia's Court of Appeals, conceding that it "presented no testimony concerning where the gun was when Towler entered the store" and arguing that "[w]hile the record does not establish that Towler displayed the firearm when entering the store, it also does not affirmatively show that Towler did not use the firearm while gaining entry."). At this time, the court simply concludes that his petition is not subject to dismissal on the grounds of procedural default.

5

> innocence" is sufficient to satisfy the "miscarriage of justice"
> requirement. See House v. Bell, 547 U.S. 518, 536–37, 126 S. Ct.
> 2064, 165 L. Ed. 2d 1 (2006).

Wolfe, 565 F.3d at 160.

It is undisputed here that Petitioner did not properly exhaust his claim, because he did not raise it in his initial petition for appeal to the Court of Appeals of Virginia. Thus, unless he can satisfy either "cause and prejudice" or show that his confinement constitutes a miscarriage of justice, this court may not reach the merits of his claim.

### A.  Cause and Prejudice

A petitioner can show cause for failing to procedurally exhaust his claim by demonstrating "some objective factor external to the defense [that] impeded counsel's efforts to comply with the State's procedural rule ... [including] that the factual or legal basis for a claim was not reasonably available to counsel, or that some interference by officials made compliance impracticable." Murray v. Carrier, 477 U.S. 478, 488 (1986) (internal quotation marks and citations omitted). To make a showing of prejudice the petitioner must demonstrate that the complained of conduct caused real harm to the petitioner. See Wainwright v. Sykes, 433 U.S. 72, 84–85 (1977).

Petitioner here argues he satisfies the "cause and prejudice" exception to the exhaustion requirement. In arguing that he has shown cause, Towler relies extensively on the Supreme Court's decision in Reed v. Ross, 468 U.S. 1 (1984), which recognized that cause may be established by counsel's failure to raise a claim that "is so novel that its legal basis is not reasonably available to counsel." 468 U.S. at 16. But the Supreme Court has also noted—both before and after Reed—that the futility of an argument "cannot constitute cause if it means simply that a claim was 'unacceptable to that particular court at that particular time.'" Bousley v. United States, 523 U.S. 614, 623 (1998) (quoting Engle v. Isaac, 456 U.S. 107, 130 n.35 (1982)). As explained in Engle and reiterated in Bousley, "[w]here the basis of a . . . claim is available, and other defense counsel have perceived and

6

litigated that claim, the demands of comity and finality counsel against labeling alleged unawareness of the objection as cause for a procedural default." Bousley, 523 U.S. at 623 n.2 (quoting Engle, 456 U.S. at 134).

Towler emphasizes that Rowland expressly abrogated Creasy, which had been the law in Virginia for over twenty years. Based on this, he contends that his counsel could not have foreseen the ruling in Rowland and thus that it was not available to him. The court disagrees. It is evident that at least one other attorney in Virginia—defense counsel in Rowland—had "perceived and litigated" the claim that Towler could have raised here at trial and on appeal.[6] Bousley, 523 U.S. at 623 n.2. As such, "the demands of comity and finality" do not allow this court to label the failure to raise the claim as cause for procedural default. See Bousley, 523 U.S. at 623 n.2. Thus, Towler cannot establish cause for his procedural default.

### B. Miscarriage of Justice or Actual Innocence[7]

Towler also argues that he is actually innocent of the crime, which is the second method by which his due process claim could properly be before this court. See Wolfe, 565 F.3d at 160 (a miscarriage of justice, such as actual innocence, can excuse a procedural default). A petitioner is "actually innocent" if "it is more likely than not that no reasonable juror would have convicted [the petitioner] in light of the new evidence." Schlup v. Delo, 513 U.S. 298, 327 (1995).[8] The purpose of the actual innocence exception is "to balance the societal interests in finality, comity, and conservation of scarce judicial resources with the individual interest in justice that arises in the

---

[6] Rowland's defense attorney apparently raised the argument ultimately accepted by Virginia's Supreme Court at the close of the evidence at trial, on March 26, 2009. See, e.g., Rowland v. Commonwealth, Opening Brief of Appellant, 2010 WL 7827702, at *1-2 (Oct. 5, 2010). That date was before Towler's trial.

[7] "[A]n allegation of 'actual innocence' is not itself a constitutional claim, but instead a gateway through which a habeas petitioner must pass to have his otherwise barred constitutional claim considered on the merits." Herrera v. Collins, 506 U.S. 390, 404 (1993); see also McQuiggin v. Perkins, 133 S. Ct. 1924, 1931 (2013) ("We have not resolved whether a prisoner may be entitled to habeas relief based on a freestanding claim of actual innocence.") (quoting Herrera, 506 U.S. at 404-405).

[8] "[A] § 2254 petitioner is entitled to have a Schlup actual innocence issue addressed and disposed of in the district court." Wolfe, 565 F.3d at 164 (citing Bousley, 523 U.S. at 623).

7

extraordinary case." Id. at 324. This exception to procedural default reflects society's "fundamental value determination ... that it is far worse to convict an innocent man than to let a guilty man go free." In re Winship, 397 U.S. 358, 372 (1970) (Harlan, J., concurring).

Respondent contends that Towler cannot rely on Schlup's "actual innocence" exception because he does not point to any "new evidence" to support such a claim. Dkt. No. 5 at 8-9. In response, Towler asserts that Respondent misreads Schlup, and that this case does not require "new" evidence of innocence, but instead requires a showing that "upon the record evidence adduced at trial no rational trier of fact could have found proof of guilt beyond a reasonable doubt." Dkt. 7 at 12 (quoting Jackson v. Virginia, 443 U.S.307, 324 (1979)). Towler also asserts that he now stands convicted of a crime based on conduct that—at the time his conviction became final—did not constitute the crime of conviction.[9] To allow his conviction to stand, then, would result in a fundamental miscarriage of justice. He relies, as he did before the state court, on O'Connor v. Ohio, 385 U.S. 92 (1966).[10]

Thus, the question presented is whether the miscarriage of justice exception to excuse procedural default is limited to claims where there is "new" factual evidence that could establish actual innocence or whether the court may also review all the evidence in light of an intervening change in law and determine that actual innocence has been sufficiently established. The court concludes that an intervening change in the law may suffice.

Numerous courts have applied, in various contexts, a definition of "actual innocence" that

---

[9] Because Towler's conviction was not yet final at the time Rowland was decided, retroactivity is not a concern.

[10] In O'Connor, the Supreme Court held, on direct appeal of a state defendant's conviction, that his failure to object at trial and during his first appeal in state court to the prosecutor commenting on his silence in closing argument, could not preclude him from raising that federal claim. Id. at 93. There, as here, the decision changing the law was decided while the defendant's direct appeal was pending. Id. at 92. Although the state habeas court held that O'Connor was inapposite because it involved a constitutional claim, while Towler asserted only a sufficiency of the evidence claim, the Supreme Court has clearly held that a habeas petitioner's Fourteenth Amendment due process rights are violated where he is convicted "even when no rational trier of fact could find [him] guilty beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 317-318 (1979). Accordingly, Towler does assert a constitutional claim.

8

includes situations where a petitioner can establish that "no reasonable juror would have convicted him by demonstrating an intervening change in law that rendered his conduct non-criminal." See, e.g. United States v. Tyler, 732 F.3d 241, 246 (3d Cir. 2013) (applying this definition of actual innocence in context of determining whether the "actual innocence" exception in the savings clause of 28 U.S.C. § 2255 would allow a motion to be brought under 28 U.S.C. § 2241); see also Martin v. Perez, 319 F.3d 799, 804 (6th Cir. 2003) (determining that habeas petitioner had stated sufficient claim of "actual innocence" based on a Supreme Court decision decided after his conviction to allow him to proceed under § 2241 (via the savings clause of § 2255)). In Bousley itself (a § 2255 case), the Supreme Court recognized the possibility of an actual innocence claim being based on a change in the law rather than "new evidence." 523 U.S. at 623-24 (remanding to allow petitioner an opportunity before district court to establish that his innocence based on a clarified definition of an element of his offense); see also Davis v. United States, 417 U.S. 333, 346-47 (1974) (noting "no room for doubt" that "a conviction and punishment for an act that the law does not make criminal" as a result of an intervening change in law "inherently results in a complete miscarriage of justice").

As the Sixth Circuit has explained, subsequent to both Schlup and McQuiggin[11]:

> The Court declines to accept the government's suggestion that in McQuiggin, the Court meant to limit actual innocence claims to those instances where a petitioner presents new facts, i.e., newly discovered evidence of innocence, and by implication to undermine those cases that have applied an equitable exception in cases where the innocence is occasioned not by new evidence but by an intervening, controlling change in the law as applied to a static set of facts. As discussed infra, numerous cases recognize an actual innocence or fundamental miscarriage of justice exception when applied in the context of a claim of legal or statutory actual innocence, albeit through varied analytical approaches.

Phillips v. United States, 734 F.3d 573, 581-82 & n.8 (6th Cir. 2013).

While neither party has cited to a case from any federal court of appeals (including the

---

[11] McQuiggin v. Perkins, 133 S. Ct. 1924 (2013), held that actual innocence, if proved, could allow a § 2254 petitioner to overcome AEDPA's one-year state of limitations.

9

Fourth Circuit) that applies an "actual innocence" exception based on changed law to excuse procedural default under § 2254, several district courts have concluded that the exception exists in this precise context. See Petronio v. Walsh, 736 F. Supp. 2d 640 (E.D.N.Y. 2010); Johnson v. Bellnier, No. 09-CV-00381, 2011 WL 3235708 (E.D.N.Y. July 27, 2011) (concluding actual innocence excused the § 2254 petitioner's procedural default where an intervening change in the law rendered his conduct no longer criminal); rev'd on different grounds, 508 F. App'x 23 (2d Cir. 2013) ("assuming without deciding that the procedural default could be excused" on grounds of actual innocence and reversing the grant of habeas relief on its merits). But see Sanchez v. Lee, No. 10 Civ. 7719, 2011 WL 3477314 (S.D.N.Y. Aug. 8, 2011) (disagreeing with the reasoning of the district court decisions in Petronio and Johnson and concluding that the language in Bousley allowing a change in the law to serve as the basis for an "actual innocence" claim to cure procedural default should not be extended to § 2254 cases), aff'd, 508 F. App'x 46 (2d Cir. 2013) (assuming without deciding that the procedural default could be excused, but concluding that the petitioner could not make out a valid legal insufficiency claim); see also Stern v. United States, No. 09 Civ. 6044, 2013 WL 71773, *10 (S.D.N.Y. Jan. 4, 2013) (Report and Recommendation by U.S. Magistrate Judge collecting authority and concluding that "[c]ourts disagree . . . as to whether an actual innocence claim under Schlup may be based on an intervening change in the law, rather than simply "new reliable evidence"), adopted by No. 09 Civ. 6044, 2013 WL 989382 (S.D.N.Y. Mar. 14, 2013).

Petronio is factually analogous to the case at bar. In Petronio, the district court determined that actual innocence excused the procedural default of the § 2254 petitioner, where a change in state law while the defendant's direct appeal was pending re-defined one of the elements of his crime of conviction. Based on the changed law, the court concluded that his conduct had been rendered insufficient to sustain his conviction. As explained by the district court in Petronio, the Supreme Court's decision in Bousley itself reflects that "petitioners may show actual innocence not only

10

through the introduction of new evidence but by highlighting intervening changes in the law." 736 F. Supp. 2d at 658 (citing Bousley, 523 U.S. at 623-24). The Petronio court described why the case before it fell within the class of rare and extraordinary cases to which the "miscarriage of justice" exception should apply, noting that "after his trial, the crime for which he was convicted underwent a substantial doctrinal change." Id. at 659. "Under the [now]-controlling interpretation of [his crime of conviction], he could not possibly have been convicted of [it]. In the Court's view, the miscarriage of justice exception was designed, at least in part, for petitioners who can show this rare type of factual innocence." Id. at 658-59. The claim by Towler here falls within the same type of case as Petronio and within one of the possible bases for "actual innocence" announced in Bousley. Thus, the court agrees with the decision in Petronio insofar as it concludes that a change in the substantive law of the count of conviction can serve as the basis for an actual innocence claim.

The question then becomes whether Towler can satisfy the standard for making that gateway actual innocence claim, i.e., whether he can show that it is "more likely than not that no reasonable juror would have found him guilty beyond a reasonable doubt . . . ." Schlup, 513 U.S. at 327. In order for Towler to be convicted under the standard announced in Rowland, there would have to be proof that he used or displayed the gun when entering the CVS. The evidence at trial, however, showed that he walked into an open drug store and that the first time anyone saw a gun in his possession was at the pharmacy counter, after he had handed a note to the clerk, when he pushed up his shirt to reveal part of the gun. Thus, the evidence strongly suggests that the weapon was concealed upon his entry and until his arrival at the pharmacy counter.

A survey of Virginia cases applying Rowland leads the court to conclude that Towler has a stronger case of "actual innocence" than defendants in those cases. First, in Rowland itself, the defendant entered an unlocked back door of a restaurant, but neither of the two employees present saw him enter. 707 S.E.2d at 332. The first time one of those employees saw him, the employee

11

was in the kitchen area and sensed a person behind him. Id. When he turned around, the defendant was pointing a gun at him. Id. The Supreme Court of Virginia held the evidence was insufficient to sustain a conviction for use of a firearm during commission of a burglary, because the burglary (the entry with intent to commit a robbery) had already been completed before the defendant used or displayed a firearm. Id. at 334.

Virginia's Supreme Court applied Rowland to reverse a defendant's conviction for use of a firearm in commission of a burglary in factual circumstances that suggest the same result would obtain here. See Rushing v. Commonwealth, 284 Va. 270, 273-75, 726 S.E.2d 333, 335 (2012). In Rushing, the defendant and an associate had pried open a patio door with a crowbar to enter the house on a lower level. Id. The first time the victim saw them, the victim was standing at the top of a flight of steps leading down to the lower level and the perpetrators, both carrying handguns, came through another room on the lower level. Id. There, the Commonwealth conceded that, pursuant to Rowland, the evidence was insufficient to convict. 284 Va. at 281, 726 S.E.2d at 339.

In Blackwell v. Commonwealth, No. 1690-11-2, 2012 WL 124389 (Va. Ct. App. Jan. 17, 2012), the court refused to apply the "ends of justice" exception of Rule 5A:18 to reverse the defendant's conviction where the evidence was that two victims saw the defendant holding a firearm moments after his forced entry into the apartment. 2012 WL 124389, at *2. The Blackwell court reasoned that the evidence left open the possibility that he used or displayed it when gaining entry and thus does not "affirmatively prove that an element of the offense did not occur." Id. Here, while there is no eyewitness testimony about the location of the gun when Towler entered the CVS, there is testimony that when he walked up to the pharmacy counter after entering, the gun was concealed until he pushed up his shirt to reveal part of it. This case thus is a stronger one for "actual innocence" than Blackwell was.

In short, while the court does not decide the merits of Towler's legal insufficiency claim

12

today and will instead give the parties an opportunity to brief the issue, the evidence presented at trial—at the very least—satisfies the standard set forth in Schlup, which is that it is more likely than not that no reasonable juror would have found him guilty based on the entirety of the evidence.

The court emphasizes that it is not today reaching the merits of Towler's claim.[12] Rather, it rules only that the claim is properly before it. See Teleguz v. Pearson, 689 F.3d 322, 327-28 (4th Cir. 2012) (a petitioner's innocence claim under Schlup "does not by itself provide a basis for relief. Instead, his claim for relief relies critically on the validity of his procedurally defaulted claims.") (quotation marks and citation omitted).

### III. Conclusion

For the reasons discussed above, the Respondent's Motion to Dismiss, Dkt. No. 3, is **DENIED.** Counsel are directed to contact chambers within five days of the entry of this Memorandum Opinion to schedule a telephone conference in order to discuss the best procedure for addressing the merits of Towler's petition. An appropriate order shall issue this day.

The Clerk is directed to send a copy of this Memorandum Opinion to all counsel of record.

Entered: September 2, 2014.

/s/ Michael F. Urbanski

Michael F. Urbanski
United States District Judge

---

[12] The merits of Towler's claim will be governed by a different standard than the Schlup standard—the one set forth in Jackson v. Virginia, 443 U.S. 307 (1979). Jackson provides that a habeas petitioner may succeed on a claim that the evidence was legally insufficient to convict only "if it is found that upon the record evidence adduced at the trial no rational trier of fact could have found proof of guilt beyond a reasonable doubt." Id. at 324. Notably, this standard is more stringent that that required under Schlup. See Schlup, 513 U.S. at 330. To establish a gateway actual innocence claim, the use of the "more likely than not" phrase reflects that the showing, while "substantial," is not as stringent as the showing that must be made under Jackson. Id. Under Schlup, the inquiry is "probabilistic" and looks at what "reasonable triers of fact are likely to do." Id. Under Jackson, by contrast, the question requires a binary response—either the trier of fact has power as a matter of law to make a finding of guilt, or it does not. Id.

13

Case 7:13-cv-00458-MFU-RSB   Document 12   Filed 09/03/14   Page 13 of 13   Pageid#: 327